## NEWPORT COUNTY.

### Bathsheba T. Newton *et al.* vs. Edward F. Newton.

W. conveyed to E. an undivided half part of two lots of land, and subsequently received from E. a bond in a penal sum of $4,000, giving W. the privilege at any time at his option, within seven years from the date of the bond, to purchase the whole of said two lots for $8,000, provided that on such purchase E. should be by W. exonerated from all liabilities and losses past or future of a firm whereof E. was a member.

W. died without having availed himself of the option, and more than three years before the expiration of the time prescribed. E. became his administrator.

The widow and children of W. filed a bill against E., charging fraudulent concealment of the bond. E. produced the bond, and denied in his answer the charges of the bill, whereupon the complainants asked leave to amend the bill by a prayer that E.'s title to the estates in question might be declared that of a mortgagee for $8,000 ; that the estates might be sold to satisfy E.'s claim, and that an account might be ordered : —

*Held,* that the option of purchase given to W. by the bond was neither a chose in action nor a transmissible right of property, but a personal privilege in W., and that on his death E. was freed from the bond.

*Held,* further, that a purchase under the option by the administrator of W. must, if made, be for and in the name of W.'s heirs ; but as this might change the succession to W.'s property, W.'s administrator could not be allowed the option given W.

*Held,* further, that in no case could the exoneration required by the bond be given by the administrator.

BILL IN EQUITY. On motion to amend the bill. The facts are stated in the opinion of the court.

*Newport, September* 30, 1876. DURFEE, C. J. This is a motion for leave to amend a bill in equity. The bill is brought by the widow and children of William Newton, late of Newport, deceased, against Edward F. Newton, administrator upon his estate. The bill sets forth that on the 4th day of February, 1847, William Newton conveyed to the defendant for $2,000 one undivided half part of a certain lot of land in Newport, and that on the 13th day of February, 1858, said William Newton conveyed to the defendant for $1,500 one undivided half part of a certain other lot of land in Newport. The bill further sets forth that there was among the personal property of William Newton which came into the hands of the defendant, in his capacity as administrator as aforesaid, as the plaintiffs have recently been informed, a certain bond or writing obligatory, executed by the defendant and delivered to William Newton, the purport of which was as follows, to wit: It recites the sales above mentioned, and binds the defendant under a penalty of $4,000 to fulfil an agreement by which he grants " the privilege to the said William Newton at any time, at his own option, for or within the term of seven years from the present date, to purchase the whole of said two estates for the sum of eight thousand dollars," &c., provided that at the delivery of the deed the defendant should be " fully exonerated from all liabilities, responsibilities, or losses, past, present, or future, in relation to the firm known as Newton Brothers," &c. The bond was dated February 13, 1858, the day of the second sale above mentioned. The bill further alleges that William Newton died September 24, 1862, and that therefore there remained three years and more to his legal representatives or heirs, within which time they could have purchased the whole of the estate, described in said bond, for $8,000, had either of the plaintiffs been aware of the existence of said bond. The bill charges that the defendant, neglectful of his obligation as administrator, fraudulently kept the bond a secret from the plaintiffs in order that said estates might vest in him by lapse of time, they having become of great value ; and that as the defendant refuses to make discovery of said bond, the plaintiffs cannot proceed in an action or suit against him, which they

desire and intend to bring. The bill prays a discovery of the bond and an injunction to prevent the defendant from selling the two estates aforesaid.

The defendant in his answer admits the making of the bond, which he says was executed in duplicate, one of the duplicate bonds being delivered to William Newton, and the other kept by himself. He produces the bond which he says was kept by himself, and denies that the bond delivered to William Newton ever came to his possession, or was fraudulently concealed by him. He further avers that William Newton died insolvent, and that the understanding between himself and William Newton was that the privilege secured by the bond was purely a personal option.

The plaintiffs' motion is a motion to amend the bill by adding a prayer for relief, to the effect that the title of the defendant in the two estates aforesaid may be decreed to be that of a mortgagee only, for $8,000 from the day he came into possession of the bond, and that he may be decreed to come to an account, &c., and that the two estates may be sold under the order of the court and the proceeds of the sale applied to the payment of said $8,000 with interest, and the balance, if any, may be decreed to be the property of the plaintiffs, and for general relief.

The defendant resists the motion on various grounds, and especially upon the ground that the privilege secured by the bond to William Newton of purchasing the two estates was a purely personal option and determined at his death.

The privilege did not in express terms extend to the heirs or legal representatives of William Newton, and, therefore, if it passed to them, it passed to them because it was either a chose in action or a transmissible right of property. But certainly it was not a chose in action in William Newton, for William Newton never elected to purchase, and, until he did elect to purchase, and offer to comply with the conditions of sale, no right of action would accrue to him. The privilege, during his life, was a mere unaccepted offer, which differed from ordinary offers to sell in that its continuance was secured by a bond. It is entirely uncertain whether William Newton would ever have accepted the offer, if he had lived as long as the offer was to continue. A refusal of the offer involved no loss or forfeiture of his estate.

It was not an option to do one of two things, one or the other of which was obligatory upon him; but a simple privilege, secured to him for seven years, to purchase " at any time at his own option." In other words, he had seven years to make up his mind whether he would purchase or not, and to procure the means of purchasing. Such a privilege may have been very valuable, but it does not appear that he ever made up his mind to accept the proffered terms of sale; and, inasmuch as neither his personal representatives nor his heirs at law could make up his mind for him after his death, we do not see how they could either succeed to or inherit the option secured to him, any more than they could succeed to or inherit his mind itself.

If the administrator should purchase under the option, he should doubtless purchase for and in the name of the heirs at law, the property being real estate. In this state, where the next of kin and the heirs at law are generally the same persons, and where the real and personal estate is equally liable for debts, such a change in the form of the assets, if wisely made, would be of small importance. But to test the power of the administrator, we may inquire what the result would be at common law. At common law the next of kin and the heirs at law are often not the same, and real estate is not liable to the same extent as personal property for debts; and therefore to concede to the administrator the power to accept the option would be to concede to him the power, to the extent of the option, to change the succession to the property, and to qualify its liability for the debts of the intestate. We think there is no principle on which this could be permitted. Moreover, in the case at bar, the administrator, to have accepted the option, would have had not only to pay $8,000, but also to exonerate the maker of the bond from partnership losses and liabilities. Neither the bill nor the proposed amendment offers to fulfil this condition, or shows that it was ever within the power of the administrator to fulfil it. Certainly the administrator had no power to bind the estate to such an exoneration by any contract of indemnity, if that was required for the fulfilment of the conditions. Such a contract would have been beyond his capacity as administrator.

We do not find any case in which the precise point here raised has been decided; but there are English cases which hold that an heir or devisee is entitled to have a contract for the purchase of real estate specifically performed by the administrator or executor in case the intestate or testator could have been held to perform it, if he were alive; but is not entitled to have the contract so performed, if, in consequence of any defect of title, the intestate or testator, being alive, would not be bound' by it, nor to have the amount of the stipulated consideration laid out in other lands or paid to him in specie. *Buckmaster* v. *Harrop*, 7 Ves. Jun. 341; *Broome* v. *Monck*, 10 Ves. Jun. 597; *Savage* v. *Carroll*, 1 Ball & B. 265, 281; *Collier* v. *Jenkins et als.* Younge, 295. And that a mere option to purchase is probably not assignable, see *Meynell* v. *Surtees*, 3 Sm. & G. 101, 117. These cases, though not precisely in point, confirm us in our conclusion, that the privilege or option secured to William Newton did not descend to his heirs at law or to his personal representatives, and that, upon his death, the defendant was freed from the obligation of his bond.

The plaintiff moves for leave to amend by adding a prayer, to the effect that the title of the defendant in the two estates described in the bill may be decreed to be that of a mortgagee only for $8,000 from the day he came into possession of the bond. The bill does not contain any allegation which would warrant any such decree. On the contrary, it appears from the bill that the conveyance of the two estates by William Newton to the defendant was not a mortgage but an absolute sale, and was not even a sale of the entire estates, but only of William Newton's undivided moiety in them. The defendant, for anything that appears, was, from the date of the second conveyance, the absolute owner of the two estates; and the only claim which William Newton had upon them was the privilege of purchasing them, at any time during seven years, at his own option, for $8,000, and the exoneration of the defendant from copartnership losses and liabilities.

We think, therefore, without considering other questions which have been raised and which suggest themselves, that the bill does not show a case upon which the plaintiffs are entitled to relief,

and that the proposed amendment, if allowed, would be entirely nugatory. The motion is accordingly denied and dismissed.

*Motion dismissed.*

*Francis Brinley & Charles C. Van Zandt,* for complainants.
*William P. Sheffield,* for respondent.