No. 17,140.

BARRY *v.* NEWTON ET AL.

(273 P. [2d] 735)

Decided August 16, 1954. Rehearing denied September 7, 1954.

Mr. M. W. SPAULDING, for plaintiff in error.

Messrs. NEWCOMER & DOUGLASS, Mr. FRANK A. BUCHANAN, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE defendants in error were plaintiffs in the trial court, and are herein referred to as plaintiffs. Plaintiff in error, herein referred to as defendant, was defendant in the trial court in an action commenced by the Newtons under the provisions of Rule 105 (a) R.C.P. Colo. In this action plaintiffs prayed that the court enter a complete adjudication of the rights of plaintiffs and defendants in and to certain real property and in and to a certain wall, or series of walls, situate on a portion of the real property involved. Trial was to the court and resulted in a decree hereinafter more explicity referred to. From this decree defendant prosecutes a writ of error.

Plaintiffs and defendant are owners of adjoining parcels of land facing south on Pearl street in the business section of Boulder, Colorado. These lots are approximately 140 feet in depth. Lying between these parcels, one of which admittedly belongs to plaintiffs, and the other to defendant, is a very narrow strip of land on a part of which there has been built and added to from time to time, at varying heights, a wall which is the

westerly wall of plaintiffs' building and a portion thereof is the easterly wall of defendant's building. The controversy centers around this narrow strip of land, and the wall, or walls, thereon constructed.

The record discloses that misunderstandings and disagreements have arisen between the parties to this action, and also between the plaintiffs' predecessors in title and defendant, concerning their respective rights in and to this narrow strip of land, and in and to the wall, or connecting walls, situate thereon, and their respective duties and obligations with respect thereto; hence, this action was brought to settle and determine the respective rights, duties and obligations of the parties, and the title to said strip of land. Plaintiffs offered evidence to show that it became necessary for a twenty-foot section of said wall to be built upward, and the entire wall to be repaired in order to prevent repetition of costly water damage to the interior of plaintiffs' building, and to prevent excessive deterioration of the aforesaid wall as it now exists. Plaintiffs offered evidence that defendant had refused to permit them necessary access to defendant's property to accomplish the raising and repair of said wall.

Stated in concise language, the pertinent and essential portions of the trial court's decree, here under review, are as follows:

1. That plaintiffs are the owners of lot 12 block 94 and the strip of land in lot 11.

2. That defendant is the owner of lot 11 in block 94 except the strip of land in lot 11, owned by plaintiff.

3. That the respective titles of plaintiffs and defendant be quieted.

4. That plaintiffs are the owners of the wall and foundations thereof erected on the south 58.60 feet of the strip of land, and the court then decreed the rights and obligations of the parties with respect to said wall.

5. With reference to the wall and foundations thereof, situate on the northerly 81.76 feet of said strip of land,

the court decreed: That plaintiffs are the owners of easterly one-half of said wall and the foundation on which it rests, and that the defendant is the owner of the westerly one-half thereof, each party's ownership being subject to an easement in favor of the other party for the support of any building now or hereafter affixed thereto, and the trial court decreed the respective rights, duties and obligations of the parties with respect to said portion of the wall, and that if said wall is destroyed or deteriorates in sufficient degree to require its entire rebuilding, the interests of both parties in said wall then shall cease, and the land thereunder shall remain the property of plaintiffs free of any restriction as to its use.

All of the property here involved was formerly owned by Anna Bliss Odlum. Exhibit "A" is the deed from Anna Bliss Odlum to Thomas E. Barry, dated December 20, 1924, conveying lot 11 block 94 "saving, excepting and reserving therefrom, however, a strip of land off the east side of said lot for its full length, said strip being more particularly described as follows:" and here follows a metes and bounds description of the narrow strip which is the subject of the controversy in this action. Said conveyance also was subject to the following additional provisions and conditions:

"Also conveying hereby the use of the West half (W½) of the brick wall, including foundations of the brick building situated on the front 58.60 feet of the strip of land herein reserved to the grantor. Either party in case of damage may repair or in case of destruction rebuild said wall, using good materials and workmanship in conformity to the building laws, and in case of repairs or reconstruction one-half (½) of the cost of such repairs or reconstruction shall be paid to the party making the same by the owner of the other parcel on demand, and any such rebuilt wall may be used by both parties. The grantor herein, for herself, her successors and assigns, reserves the right at any time to terminate this party wall agreement by deeding to the then owner of

Lot 11, above described said wall and the front 58.60 feet of strip hereinabove reserved and excepted. In case of destruction of said wall by fire, all of the insurance money received for such destruction shall be payable without deduction to grantor herein, her heirs, successors or assigns.

"In the event that the wall now constructed on the rear 81.76 feet of the strip hereinabove reserved, shall, at any time, be rebuilt or require reconstruction in its entirety, then grantor herein covenants for herself, her heirs, successors and assigns, that such rebuilt or reconstructed wall shall be constructed or rebuilt entirely within the lot lines of Lot 12, in Block 94, and thereupon title to the rear 81.76 feet of the strip hereinabove reserved shall immediately, and without further conveyance or consideration, pass to the then owner of Lot 11, aforesaid."

Exhibit "B" is an agreement, dated November 12, 1930, between Anna Bliss Odlum, party of the first part, and Thomas E. Barry, party of the second part, the pertinent portions of which are as follows:

"This Agreement, made this 12th day of November, 1930 between Anna Bliss Odlum, party of the first part, and Thomas E. Barry, party of the second part, witnesseth;

"Whereas, Party of the first part has heretofore conveyed to party of the second part Lot Eleven (11) Block Ninety-four (94) in the City of Boulder, according to the recorded plat thereof, excepting a strip of land off the east side of said Lot for its full length, the strip being 1.60 ft. in width on Pearl Street and 1.34 ft. in width on the alley in the rear of Pearl Street. Also, the use of the East Half of the brick wall, including the foundation, situated on 58.60 ft. of the said strip of land, and

"Whereas, Party of the second part desires a half interest in the said wall clear to the alley and desires to reconstruct 20 ft. of said wall and to change the location of the sewer now on Lot Eleven (11) or partly thereon

so that the same will be wholly within the Lot line of Lot Twelve (12).

"Now, therefore, Party of the first part hereby grants, bargains and sells to the party of the second part the continuation of the said wall, including the foundations from the end of the 58.60 ft. section to the alley.

"Also, grants to him the privilege of reconstructing, at his own expense, approximately 20 ft. of the said wall herein granted and conveyed and also the right and privilege to change the location of the sewer above mentioned so that it will be wholly within the Lot line of Lot Twelve (12).

"In consideration whereof, party of the second part hereby leases to the party of the first part for a period of four years from April 1st, 1929, and for the further consideration of $10.00 per annum a right of way for ingress and egress over Lot Eleven (11) to and from one rear door for the use of all the tenants of the buildings located on Lot Twelve (12) except the corner building on 15th and Pearl Street, which has an outlet on 15th Street, the said right of way to be from the alley in the rear of Pearl Street to and from the one rear door above mentioned.

"Party of the second part further agrees that he will make the necessary alterations for the taking care of the roof water on both properties, the expense of which is to be paid by the party of the second part, save and except the party of the first part is to pay a sum not to exceed $70.00, which is to be her full share of the expense in taking care of the roof water on the premises; if party of the second part finds it necessary to construct a drain pipe on Lot Twelve (12) for the purpose of taking care of the roof water on either property or the joint properties, the right and privilege is hereby granted."

These documents constitute the entire agreement between the parties, and the legal effect of the instruments necessarily form the basis for the determination of the

respective rights, interests, duties and obligations of the parties to this action.

The principal issues here presented involve the proper interpretation and construction of said exhibits, it being apparent that defendant has whatever estate or right in the strip of land or wall thereon, granted by said instruments, and plaintiffs, being successors in interest to Anna Bliss Adlum, have whatever estate and rights to said strip of land, or the wall thereon, which was reserved, or were not granted or conveyed to defendant.

It appears from the record, and is not disputed, that plaintiffs, and their predecessors in interest, since 1929 and thereafter, continuously to the date of the trial, have paid all taxes assessed against said strip of land. No interest therein (excluding the wall) was conveyed to defendant by the provisions of Exhibit "B," and the grant of a half interest in the wall, including the foundation, does not operate to convey the land under the wall, where, as here, from the recitals and the language employed in plaintiffs' Exhibits "A" and "B," it is apparent that the parties to these instruments were dealing with the wall, with its foundation and the land thereunder, as separate entities.

It should here be noted that plaintiffs have on their land a two-story building which extends the full length of their lots, while defendant has on his land a one-story structure which extends north from Pearl street about half way to the north line of the property.

If Exhibit "B" is ambiguous on its face, we conclude that the trial court correctly construed the instrument as a whole as granting defendant only a one-half interest in and to said wall and foundation thereunder; to otherwise construe Exhibit "B" would lead to an inequitable and unreasonable result. To construe the instrument as granting defendant the whole of said northerly 81.76 feet of the wall, as contended by defendant, would be to say that a portion of the west wall of plaintiffs' building was owned by defendant, whose building extends so as to be

attached to only a small portion of this section of the intervening wall.

It is manifest that the strip of land was clearly, specifically and expressly excepted and reserved from the land conveyed to defendant by Anna Bliss Odlum. The record disclosed that she formerly owned all of lots 11 and 12 in block 94, Boulder. A two-story building was situate upon lot 12, the west wall of which was partially, if not entirely, within the boundaries of lot 11. There then was standing upon the front or southerly 58.60 feet of said lot 11 a one-story structure, the east side of which was attached to a portion of the westerly wall of plaintiffs' two-story structure on said lot 12. By plaintiffs' Exhibit "A," Anna Bliss Odlum conveyed the one-story building and excepted and reserved to herself the title to the strip of land here in controversy. This instrument is clear, free from ambiguity and unequivocal, and by which plaintiffs did grant to defendant an interest in the wall constructed on the front or southerly 58.60 feet of said strip of land, but the title to said land remained in Anna Bliss Odlum, plaintiffs' predecessor in interest.

We now refer to that clause in plaintiffs' Exhibit "A," which reads: "In the event that the wall now constructed on the rear 81.76 feet of the strip hereinabove reserved shall at any time be rebuilt or require reconstruction in its entirety, then grantor herein covenants for herself, her heirs, successors and assigns, that such rebuilt or reconstructed wall shall be reconstructed or rebuilt entirely within the lot lines in Lot twelve (12) in Block ninety-four (94), and thereupon title to the rear 81.76 feet of the strip hereinabove reserved shall immediately and without further conveyance, or consideration, pass to the then owner of Lot eleven (11) aforesaid."

The trial court held that this claimed conveyance violated the rule against perpetuities and accordingly entered its decree in favor of plaintiffs. This rule is recognized in Colorado as a part of the common law. *Chilcott v. Hart,* 23 Colo. 40, 45 Pac. 391. We hold that

the trial court correctly determined this question. A limitation over which depends upon an uncertain event passes no vested interest. It is impossible to determine in whom the ultimate right to the estate may vest, or whether it will ever vest, and hence no conveyance can pass an absolute title because it is wholly uncertain in whom the estate will vest on the happening of the event upon which the interest is to take effect. *Proprietors of the Church in Brattle Square v. Grant,* 3 Gray (69 Mass.) 142, 63 Am. Dec. 725.

The claimed interest is an executory interest, or more properly expressed, a springing use. Upon the happening of the contingency, the interest "springs" into being.

Where a grantor reserved and excepted "out of the aforesaid premises the lime kiln and the land that the same now occupies so long as said lime kiln is occupied and used for the purpose of burning lime" the New York Court of Appeals in *Walker v. Marcellus & O.L. Ry. Co.,* 226 N.Y. 347, 123 N.E. 736, said: "It follows that what was attempted to be passed to the grantee was a future executory estate in fee which should vest in possession in case the contingency upon which it was limited should ever occur. * * * If this is so the attempted conveyance by the plaintiff was void. No valid future estate passed to the grantee. The absolute fee remains in the grantor."

The rule against perpetuities is applicable to contingent remainders, and the event on the happening of which the remainder is to vest must be one that is certain to happen within the prescribed period, or the limitation will be bad. *Chilcott v. Hart, supra; Bankers Trust Co. v. Garver,* 222 Ia. 196, 268 N.W. 568. The object of the rule against perpetuities is to require the vesting of future estates within a limited period of time after their creation, and to bar the creation of future interests depending on remote contingencies. *Madison v. Larmon,* 170 Ill. 65, 48 N.E. 556. The rule is founded on the public policy of preventing the fettering of the marketability of property over long periods of time by

indirect restraints upon its alienation. Under this rule no interest subject to condition precedent is good unless the condition must be fulfilled, if at all, within the period limited by the rule. The usual effect of the rule against perpetuities is to prohibit or invalidate attempts to create by limitation, whether executory or by way of remainder, future interests or estates, the vesting of which is postponed beyond the prescribed period.

We have carefully and painstakingly reviewed the other points urged for reversal. We are convinced that the trial judge properly determined these matters and came to a fair and equitable determination thereof within the intent and purpose evident from the two writings in evidence, on which all parties rely.

The judgment and decree are affirmed.