No. 23352.

ALFRED P. ATCHISON AND IDA MAE ATCHISON *v*. THE CITY OF ENGLEWOOD, A MUNICIPAL CORPORATION; AND MARTIN-MARIETTA CORPORATION, A MARYLAND CORPORATION.

(463 P.2d 297)

Decided November 10, 1969. Opinion modified and as modified rehearing denied January 26, 1970.

RALPH A. COLE, WILLIAM O. PERRY, for plaintiffs in error.

MYRICK, CRISWELL and BRANNEY, JOHN A. CRISWELL, SHIVERS and BANTA, for defendant in error The City of Englewood.

DAWSON, NAGEL, SHERMAN and HOWARD, MICHAEL REIDY, RAYMOND J. TURNER, CHARLES R. FREDERICKSON, for defendant in error Martin-Marietta Corporation.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THE plaintiffs in error, referred to as plaintiffs or by name, brought an action against the City of Englewood and Martin-Marietta Corporation as defendants for a determination with respect to plaintiffs' preemptive right to repurchase certain lands. The district court granted defendants' motions for summary judgment on the grounds that the documentary provisions granting the rights to the plaintiffs were void as violative of the rule against perpetuities. We affirm.

In 1948 Mr. and Mrs. Atchison were, and for a number of years had been, the owners of approximately 2500 acres of land in Jefferson County, together with water rights belonging thereto. Englewood desired to acquire the water rights, but had no use for the land. However, the City concluded that it should purchase the land with the water in order to be in a possibly more favorable position when it prosecuted proceedings to change the

points of diversion of the water and to change its use from irrigation to municipal purposes. A sale and purchase of the land and water from the plaintiffs to Englewood was arranged. The written documents involved gave the right to Mr. and Mrs. Atchison to repurchase the land (but without any water transferred therefrom in the meantime) upon the same terms and conditions as Englewood might be willing to sell it to a third person. Later Englewood entered into a lease of most of the land (presumably with few or no water rights) and as a part of the lease granted to Martin-Marietta an option to purchase the demised property. Still later Martin-Marietta exercised the option and purchased the land. Under the record existing as a basis for the summary judgment we treat Mr. and Mrs. Atchison as having no knowledge and not being charged with notice of the option rights granted to Martin-Marietta; and that upon obtaining knowledge or being charged with notice they made timely filing of this action. They evinced a desire to purchase the land upon the same terms as the corporation had purchased it.

While there are some other problems involved of which we will make disposition, under our view the two principal questions presented are: (1) was the preemptive right granted Mr. and Mrs. Atchison personal, *i.e.*, would it die with them and therefore not be violative of the rule against perpetuities; and (2), even if the preemptive right was not personal and would extend more than 21 years beyond the life of a person in being, should it be proscribed by the rule against perpetuities? We have not experienced too much difficulty in concluding that the right was not personal; but, as to the second question, the scales of decision are so evenly balanced that a little weight on either side would weigh it down.

As a preface to quoting the documentary provisions involved, we state the rule against perpetuities, which had its inception with the *Duke of Norfolk's Case*

in 1682 (3 Ch. Cas. 1, 26). It is a part of the common law which was adopted in this state and has been applied in Colorado to certain contingent remainder interests. See *Rocky Mountain Fuel Co. v. Heflin,* 148 Colo. 415, 366 P.2d 577; *Barry v. Newton,* 130 Colo. 106, 273 P.2d 735. See also 2 *E. King, Colorado Practice Methods* § 2498. The rule is defined as follows: No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest. Parenthetically, attention is directed to our inclusion of the term "if at all" in the definition. For the absence of this phrase in the two Colorado cases just cited Professor Thompson G. Marsh has admonished this court. 32 *Dicta* 7 and 39 *Dicta* 123. We also note the suggestion of Messrs. W. Barton Leach and Owen Tudor that the definition might commence with the words "Generally speaking." 6 *American Law of Property* § 24.1, p. 4.

Under date of December 15, 1948 the plaintiffs and Englewood entered into an agreement of sale and purchase, referred to herein as the December agreement. By the terms of this contract the plaintiffs agreed to sell and Englewood agreed to buy the land and water rights (except one-half the mineral rights to be reserved by the plaintiffs) for a sales and purchase price of $350,000 to be paid by January 3, 1949. Paragraphs 11 and 13 of this agreement provided:

"11. Concurrently with the delivery of the deed to said property and certificate for forty-five shares of stock of the Nevada Ditch Holding Company by the Atchisons to the City as in this contract provided, the parties hereto shall enter into a further contract under which the City shall give to the Atchisons the exclusive and prior right at the option of the Atchisons to repurchase or to lease said real estate, together with any water rights appurtenant to said lands at the time of such sale or leasing at the same price and upon the same terms and conditions upon which the City is willing to sell or lease said real estate and any water right then appurtenant

thereto to any third person; and the City shall not sell or convey or contract to sell or convey or lease said lands or the water rights that may then be appurtenant thereto to any third person unless and until the City, for a period of 60 days, shall first offer in writing to sell or lease such lands with the then appurtenant water rights, if any, to the Atchisons at the same price and upon the same terms and conditions as in the case of such other sale or contract of sale or lease of such property to any third person . . . ."

\* \* \*

"13. The terms and provisions hereof shall insure to the benefit of the heirs, legal representatives and assigns of the Atchisons."

On or about January 3, 1949 the consideration was paid to the plaintiffs; the property was conveyed by them to Englewood, and Englewood and the plaintiffs entered into "a further contract" (referred to as the January agreement) which provided as follows:

"WHEREAS in connection with the purchase of said land and water rights by the City and as part of the consideration of the sale thereof by the Atchisons, the Mayor of the City by Resolution of its City Council duly adopted on the 14th day of December 1948, was duly authorized and empowered to execute this agreement on behalf of the City and the Clerk of the City was authorized and empowered to attest the same.

"NOW, THEREFORE, IN CONSIDERATION of the premises the City does hereby covenant and agree to and with the Atchisons as follows, to wit:

"1. The City hereby gives and grants unto the Atchisons the exclusive and prior right at the option of the Atchisons to repurchase or to lease the lands described in said Warranty Deed of even date herewith to which reference is hereby made for description of said lands; together with any water rights appurtenant to said lands at the time of such sale or leasing at the same price and upon the same terms and conditions upon which the City

is willing to sell or lease said real estate and any water rights then appurtenant thereto to any third person; and the City shall not sell or convey or contract to sell or convey or lease said lands or the water rights that may then be appurtenant thereto to any third person unless and until the City, for a period of sixty days, shall first offer in writing to sell or lease such lands with the then appurtenant water rights, if any, to the Atchisons at the same price and upon the same terms and conditions as in the case of such other sale or contract of sale or lease of such property to any third person . . . ."

\* \* \*

"3. The rights of the Atchisons under this agreement shall be deemed not in tenancy in common but in joint tenancy in them and in the survivor of them, their assigns and the heirs and assigns of such survivor."

## I.

Counsel for plaintiffs argue strenuously that the preemption granted to the "Atchisons" in paragraph 11 of the December agreement and in paragraph 1 of the January agreement was a right which was granted to them personally and would die with them. They also contend that paragraph 13 of the December agreement and paragraph 3 of the January agreement relate to other portions of the agreements, but not to paragraphs 11 and 1, respectively. In other words, they submit, paragraphs 11 and 1 are severable and are things apart. Counsel further urge that stock phrases such as "heirs and assigns" should not be applied to a particular provision of a contract except upon examination of the context and surrounding facts; that these words and those similar thereto should not be applied to the provisions relating to the preemptive right as it is apparent that the parties intended that right to be personal; and that the plaintiffs are entitled to a presumption that the parties intended to have a legal and enforceable preemptive right. See *Restatement of Contracts* § 236.

At this juncture we wish to mention the significant fact that, as conceded by one of plaintiffs' attorneys during oral argument, Mr. and Mrs. Atchison had counsel in connection with this transaction in December 1948 and January 1949. The deposition of Mr. Atchison was taken. The district court in its order granting the motions for summary judgment did not refer to this deposition, and we consider it only in the following particular. Mr. Atchison stated in effect that all of the documents involved were submitted to and approved by the attorney engaged by him and his wife and that they would not have signed any of them except upon such approval.

In the December agreement the provision "The terms and provisions hereof shall inure to the benefit of the heirs, legal representatives and assigns of the Atchisons" is definite and unambiguous. This being the case this is not a matter for utilization of the rules sought by counsel.

Counsel have called attention to the fact that the December agreement reserved one-half of the mineral rights to "the Atchisons, their heirs, and assigns," and that the phrase "their heirs and assigns" is not used in paragraph 11. Nevertheless, the December agreement ends with the explicit statement that its terms and provisions inure to the benefit of heirs and assigns, and the wording of paragraph 11 is a part of those "terms and conditions." It is inconceivable to us that the attorney engaged by the Atchisons to review this document could have come to any other conclusion; and furthermore, even if the provisions of paragraph 11 were intended to be severable and purely personal, we believe that an appropriate modification would have been made in paragraph 13.

Plaintiffs have urged upon us as authority for holding the preemptive right to be personal *Maynard v. Polhemus,* 74 Cal. 141, 15 P. 451; *Dodd v. Rotterman,* 330 Ill. 362, 161 N.E. 756; *Old Mission Peninsula School District v. French,* 362 Mich. 546, 107 N.W.2d 758; and

*Newton v. Newton,* 11 R.I. 390, 23 Am. Rep. 476. Since the wording of the document in each of these cases is sufficiently different from the provisions of the instruments herein involved, we do not regard these cases as applicable.

The governing document appears to be the January agreement. It is to be observed that in it paragraph 3 placed the rights in joint tenancy, in contrast to the "heirs, legal representatives and assigns" of paragraph 13 of the December agreement. We repeat paragraph 3 of the January agreement:

"3. The rights of the Atchisons under this agreement shall be deemed not in tenancy in common but in joint tenancy in them and in the survivor of them, their assigns and the heirs and assigns of such survivor."

Counsel for plaintiffs have asked that this be interpreted as meaning only that, when the preemptive right is exercised, it will be held in joint tenancy by the Atchisons and that the executory preemptive right itself was not in joint tenancy. We view the relationship of paragraph 3 to paragraph 1 of the January agreement in the same light as that of paragraph 13 to paragraph 11 of the December agreement. In the January agreement the *rights* under it were to be held in joint tenancy and the preemptive privilege was one of those rights. It is of some significance that the word "right" is used in paragraph 1.

In paragraphs 11 and 1 of the two agreements it is provided that the Atchisons' pre-emptive right is "exclusive." We are urged to interpret this as meaning that the right is personal and does not survive them. However, our interpretation of the term "exclusive" used in each agreement means that this pre-emptive right cannot be granted by Englewood to anyone else.

Accordingly, we hold that the preemptive right was not personal.

## II.

We now approach the question of whether the rule

against perpetuities should be applied to preemptive rights. At the outset the difference between an ordinary option and a preemptive right should be noted. In a typical option the optionee has the absolute right to purchase something for a definite consideration. A pre-emptive right involves the creation of the privilege to purchase only on the formulation of a desire on the part of the owner to sell; and, in the case here, the holder of the right must purchase for the price at which the owner is willing to sell to a third person.

▮▮▮▮ It will be recalled that there is a difference between the rule against perpetuities and the rule against restraints upon alienation. Both rules have the same fundamental purpose, namely, to keep property freely alienable; or, stated differently, each stems from a general policy which frowns upon the withdrawal of property from commerce. The rule against perpetuities invalidates interests which *vest* too remotely. The rule against restraints upon alienation relates to other unreasonable restraints. For example, A conveys land to B in fee simple with the provision that if B during his lifetime shall convey or attempt to convey it the land shall become the property of C in fee simple. This does not violate the rule against perpetuities but is violative of the rule against restraints with the result that B obtains a fee simple absolute. An option given to a person, his heirs and assigns, to purchase land for $5,000 with no limiting term is void under the rule against perpetuities. The reason is that, with such an option outstanding the owner dare not place substantial improvements on the land, and the likelihood of anyone purchasing it is remote. The reason for application of the rule against perpetuities to a preemptive right to purchase at an offeror's price acceptable to the owner is not supported by the same reasoning as found in the option example, thus making the case for non-application much more arguable. See discussions in 6 *American Law of Property*

commencing on the following pages: 13, 22, 141, 411 and 508.

The application of the rule to ordinary options is firmly established. However, so far as we are advised this is the first time that there has been before this court the question of application of the rule against perpetuities to a preemptive right to purchase at an offeror's acceptable price. The Restatement of the Law of Property makes no exception of preemptive right under the rule against perpetuities and in the comment following § 413 it states, "Preemptive provisions, being analogous to options upon a condition precedent, must comply with the rule against perpetuities in so far as their maximum duration is concerned." IV *Restatement of the Law of Property*, p. 2444. In 6 *American Law of Property* § 24.1, pages 7 and 8 Messrs. Leach and Tudor criticize the Restatement position and deplore what they state is the rule of the American Law Institute that it follows existing law and not what the law should be.

Other authorities supporting, or tending to support, the view that a preemptive right such as involved here is void under the rule against perpetuities are: *Neustadt v. Pearce,* 145 Conn. 403, 143 A.2d 437; *H. J. Lewis Oyster Co. v. West,* 93 Conn. 518, 107 A. 138; *Saulsberry v. Saulsberry,* 290 Ky. 132, 160 S.W.2d 654; *Roberts v. Jones,* 307 Mass. 504, 30 N.E.2d 392, 132 A.L.R. 663; 162 A.L.R. 604; and 41 Am. Jur. *Perpetuities and Restraints on Alienation* § 41 (Supp. 1969). While statements of the American Law of Property, in citations already given, indicate that the law ought to be that the rule should not apply and that non-application is the modern trend, it nevertheless states, "If the preemptive provision is in the contract form only, the equitable future interest created can be held within the rule on the authority of the option cases." 6 *American Law of Property* § 26.66, p. 510.

The plaintiffs rely upon *Weber v. Texas Co.,* 83 F.2d 807, *cert. denied,* 299 U.S. 561, 57 S. Ct. 23, 81 L.Ed. 413,

and except as later mentioned it supports their position. There the owners of land leased it to Texas Company's assignor for prospecting and drilling for oil and gas. The lease was for a primary term of five years and as long thereafter as either oil or gas is or could be produced from any well on the land. The owners reserved a one-eighth royalty. The lease provided:

"The lessee is hereby given the option of purchasing all or any part of said royalty rights from the lessor at the best bona fide price offered by responsible third parties when and if offered for sale or transfer by lessor."

Texas Company acquired the lessee's interest and brought in a producing well. Prior to completion of the drilling the owners sold a one-fourth interest of their royalty to Weber for $7,000. As soon as Texas Company learned of this they tendered $7,000 for the interest sold. The tender was refused. Texas Company then sued for specific performance. It was held that the preemptive right was valid and enforceable. The court concluded that when an option simply gives an oil and gas lessee the prior right to take the lessor's royalty interest at the same price the lessor could and would secure from another purchaser, there is no restraint of free alienation by the lessor. The option, therefore, according to the court, should not be objectionable as a perpetuity. In *Beets v. Tyler*, 365 Mo. 895, 290 S.W.2d 76 the court indicates approval of the ruling in *Weber*. However, this is a dictum as the preemptive right before the court was for a term of only 20 years (except if all parties in interest should extend it for a further 20-year term by executing a new written instrument). For an interesting discussion of *Weber* and other authorities see Reasoner, *Preferential Purchase Rights in Oil and Gas Instruments*, 46 Texas Law Review 57, reprinted in 5 Rocky Mountain Mineral Law Review No. 2, p. 163.

We have held that before us is an inheritable preemptive right without limit as to time. It is in no manner connected with any land owned by Mr. and Mrs. Atchi-

son. While they reserved one-half of the mineral rights, this interest can be sold at any time; and following a sale there will be no land title interest of record to give any clue as to the identity of future successors in interest to the preemptive right. We feel that at some point in the infinite time at which Englewood might in the future conclude to sell the land, ascertaining and locating the owners of the preemptive right would be an unreasonable task. As a result, there would be a sufficiently unreasonable restraint upon the transferability of the property as to justify imposition of the rule against perpetuities. It may be said that we are stating a rule against alienation and giving it a label of the rule against perpetuities. Be that as it may, the result is the same.

■ It is to be noted that in *Weber v. Texas Company, supra* the identity of the owners of interests involved could be ascertained — or at least with some reasonable investigation discovered — from the record title to the mineral rights and royalties. Our conclusion might be different here if the ownership of the preemptive right followed the title to designated real property; or, if it were restricted to a limited term found to be reasonable, albeit longer than a life in being plus 21 years. Be that as it may, we rule merely that a contractual right, granted to A and his heirs and assigns, unlimited as to time, to purchase land upon the same terms as the owner could and would sell to a third person, is void.

### III.

■ The plaintiffs submit that this matter was not in a posture susceptible of determination under a motion for summary judgment, citing familiar authority as to the cautions which should be exercised by a court in connection with a motion for summary judgment. The main thrust of the argument on this point is that there were factual issues to be resolved in interpreting the contract and determining the intent of the parties. We are not so persuaded. To us there are no issues of material fact existing here. The documents are not ambiguous and

the district court properly made a determination within the "four corners" of the documents.

## IV.

The plaintiffs contend that the inclusion of paragraph 3 in the January agreement was ultra vires. To review, paragraph 11 of the December agreement provided that the Atchisons should have a preemptive right to repurchase; and paragraph 13 of that agreement provided that the terms and provisions thereof should inure to the benefit of the heirs, legal representatives and assigns of the Atchisons. The City Council of Englewood adopted a resolution which authorized and approved the December agreement, This resolution provided that upon consummation of the agreement, "the Mayor of the City of Englewood be and he hereby is empowered to execute on behalf of said City a contract with Alfred P. Atchison and Ida Mae Atchison in conformity with the provisions of paragraph 11 of the agreement hereinbefore set forth . . ." The January agreement was executed and delivered under the authority of this resolution. The plaintiffs submit that anything in the January agreement beyond the provisions of paragraph 11 of the December agreement was ultra vires and inoperative and, particularly, that the provisions of paragraph 13 or anything resembling them could not be made a part of the preemptive right. Therefore, they say, paragraph 3 of the January agreement must be disregarded and the preemptive right regarded as a personal one. Under the initial view that we expressed in this opinion, paragraph 13 is inseparably connected with paragraph 11, and *vice versa*. To be in strict compliance with the resolution, the January agreement should have contained the provisions of paragraph 11 instead of those used in paragraph 3; but, in any event, an inheritable preemptive right is involved. Furthermore, plaintiffs' attorney approved the January agreement and plaintiffs executed it and placed it of record. They are in no position now to complain of its provisions.

## V.

Plaintiffs' reply briefs were filed here on September 16, 1968. In August 1969, over objection of the defendants, we granted a motion of plaintiffs to file a supplemental pleading, with leave granted to the defendants to re-present their objections at the time of oral argument. The supplemental brief subsequently filed by the plaintiffs was built around section 394f in the 1948 supplement to the Restatement of the Law of Real Property which reads as follows:

" 'Effect of invalidity of option to repurchase. An option to purchase the whole or any part of the interest conveyed is necessarily only one ingredient in the entire transaction between the parties. If this ingredient is so essential a part of the entire agreement that the parties would not have made the agreement if they had known of the option's invalidity, then the failure of the option is a sufficient basis for appropriate proceedings to rescind the entire transaction and to restore each of the parties to the situation in which he was before the transaction was made. The rule stated in this comment is a specific application of the rule stated in Section 402 concerning the effect of partial invalidity upon the balance of the attempted limitation.' "

Plaintiffs argue that, even if the preemptive right is violative of the rule against perpetuities, they are entitled to relief in the form of rescission. The first mention of rescission in the case was in the eleventh ground contained in the motion for new trial. This was to the effect that the court should not have granted summary judgment under the rule against perpetuities when the record disclosed facts warranting relief for specific performance, rescission, reformation, fraud, damage, unjust enrichment and failure of consideration. This was an action for a declaratory judgment as to the validity of the plaintiffs' preemptive rights. It was presented to the trial court on that basis and neither this statement in the motion for new trial nor fleeting mention of it in the

original brief filed here changed the nature of the case. For all practical purposes, this new theory in form of relief was first argued nearly a year after the case was at issue here. Until then the plaintiffs sought solely to have a determination that their preemptive right was enforceable. Considering all the circumstances, we think the presentation of this request for rescission came too late, and we now sustain the defendants' objection to that effect.

Judgment affirmed.

MR. JUSTICE KELLEY dissenting and MR. JUSTICE LEE not participating.

MR. JUSTICE KELLEY dissenting:

I dissent. The majority fail to persuade me.

It is acknowledged that this is a case of first impression in this jurisdiction. The City and the Atchisons entered into a contract, the terms of which both parties in good faith believed to be binding upon them. The City now seeks to justify its having reneged on its agreement giving the Atchisons a preemptive right to lease or purchase at a third party offeror's price after notice and within a limited period. The City bottoms its "right" to void the specific terms of its contractual obligation upon an ancient rule of property known as the *Rule Against Perpetuities.*

The Rule Against Perpetuities is an arbitrary judge made doctrine which was invoked for the purpose of keeping property alienable. To justify its application its reasoning must be valid as it pertains to the facts here.

Authorities cited in the majority opinion suggest that there is not complete unanimity when it comes to the application of the doctrine to all situations. Also, the comment of Messrs. Leach and Tudor concerning The Restatement of Property appeals to me, wherein they say:

"* * * There are many problems of perpetuities in which

the authorities are so thin that a court facing one of these problems *de novo* should feel free to re-examine existing decisions; * * *."

Under the facts of this case the equities favor the Atchisons and the dire consequences which the doctrine was designed to avoid are not present here.

I would, therefore, favor following the reasoning and the rule of *Weber v. Texas Co.*, 83 F.2d 807, *cert. denied* 229 U.S. 561, 57 S.Ct. 23, 81 L.Ed. 413.

## ON PETITION FOR REHEARING

On Petition for Rehearing, MR. CHIEF JUSTICE MCWILLIAMS, MR. JUSTICE DAY and MR. JUSTICE GROVES would deny the petition. MR. JUSTICE PRINGLE, MR. JUSTICE HODGES and MR. JUSTICE KELLEY would grant the petition. MR. JUSTICE LEE did not participate. The Court being equally divided, the Petition for Rehearing is DENIED.

On Petition for Rehearing, MR. JUSTICE PRINGLE states:

I would grant the Petition for Rehearing limited to the question of whether the matter should be returned to the trial court for further proceedings on issues other than those relating to the application of the rule against perpetuities.

I am authorized to say that Mr. Justice Hodges joins me in this view.

On Petition for Rehearing MR. JUSTICE KELLEY states:

Consistent with my dissent to the Court's opinion I would grant a rehearing on all issues; however, in the alternative, having failed to obtain any adherents to my point of view, I join Mr. Justice Pringle in the limited review he would grant.