**CEDAR LANE INVESTMENTS,**
a Colorado partnership,
**Plaintiff–Appellant,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation, Defendant–Appellee.**

No. 93CA1201.

Colorado Court of Appeals,
Div. IV.

Sept. 8, 1994.

James L. Merrill, Attorneys at Law, James L. Merrill, Paul G. Anderson, Colorado Springs, for plaintiff-appellant.

Cooper & Kelley, P.C., John R. Mann, Daniel R. McCune, Denver, for defendant-appellee.

Opinion by Judge DAVIDSON.

In this action to enforce the terms of a liability insurance contract, plaintiff, Cedar Lane Investments (Cedar Lane), appeals from the summary judgment and award of costs entered in favor of defendant, St. Paul Fire & Marine Insurance Co. (St. Paul). We affirm.

Cedar Lane owns a tract of land located in Fountain, Colorado, upon which its tenant previously operated a precious metal recovery business. In the course of operating that business, the soil at the site became contaminated with pollutants, including cyanide. After both the Colorado Department of Health and the United States Environmental Protection Agency (EPA) became concerned with the pollution, Cedar Lane took measures to decontaminate the property.

In 1991, the EPA issued an administrative order directing Cedar Lane to take further action to clean up the chemical contamination. Cedar Lane incurred significant expense in performing the cleanup operations.

Cedar Lane filed a claim under a comprehensive general liability policy issued by St. Paul to recover the costs of decontaminating the property. After St. Paul denied the claim, Cedar Lane filed suit requesting a declaratory judgment that its claim was covered under the policy and damages resulting from a bad faith breach of an insurance contract.

Both parties moved for summary judgment on the issue of coverage under the policy. The trial court granted summary judgment in favor of St. Paul on several grounds. Because St. Paul earlier had made an offer of settlement that had been refused by Cedar Lane, the trial court awarded it costs pursuant to § 13–17–202, C.R.S. (1993 Cum.Supp.).

I.

Cedar Lane first argues that the trial court erred in determining that the insurance contract unambiguously excludes coverage for property damage to Cedar Lane's own property. It contends that summary judgment was improper because the insurance contract is ambiguous and therefore evidence of the parties' intent must be considered before a determination on coverage may be rendered. We do not agree.

■ Summary judgment is a drastic remedy which is warranted only upon a clear showing that there is no genuine issue of material fact and that the moving party is entitled judgment as a matter of law. *Ellerman v. Kite*, 625 P.2d 1006 (Colo.1981).

Once the party moving for summary judgment has made a convincing showing that genuine issues of fact are lacking, the opposing party cannot rest upon the mere allegations or denials in his or her pleadings, but must demonstrate by specific facts that a controversy exists. *Sullivan v. Davis*, 172 Colo. 490, 474 P.2d 218 (1970). Neither may a genuine issue of material fact be raised merely by the argument of counsel. *Brown v. Teitelbaum*, 830 P.2d 1081 (Colo.App. 1991).

■ "In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978). Ambiguity is not created simply by disagreement among the parties as to the meaning of a contract provision. *See Fibreglas Fabricators, Inc. v. Kylberg*, 799 P.2d 371 (Colo.1990); *Union Rural Electric Ass'n v. Public Utilities Commission*, 661 P.2d 247 (Colo.1983).

■ The comprehensive general liability policy provides for payment of amounts the insured is "required to pay as damages for a covered bodily injury or property damage claim resulting from an accidental event." According to the policy, "injury or damage" refers to "bodily injury or property damage." The policy defines "property damage" as "any damage to tangible property of others that happens while this agreement is in effect." The policy specifically excludes "damage to property [the insured] or any other protected persons own, rent, occupy, use or physically control."

These terms explicitly indicate that the policy is intended to cover the insured's liability, if any, for damage to property belonging to persons who are not parties to the insurance contract.

Cedar Lane contends, nonetheless, that the "Coverage Limitation Endorsement" attached to the policy indicates that the policy was intended to cover property damage oc-

curring at the property in question. The "Coverage Limitation Endorsement" states that the policy coverage is limited to "claims that result from the ownership, maintenance or use of the described premises; or operations described." In the space marked "covered operations or premises" it listed the address of the property at issue.

Cedar Lane maintains that any ordinary reader would conclude from that endorsement that the premises listed there are themselves covered for property damage despite the indications to the contrary contained in the remainder of the policy. In its view, this is an ambiguity which must be resolved by hearing evidence of the contracting parties' intent. We do not agree.

The policy, by its own plain terms, is not a property damage policy covering the insured's own property. The insured's own property is explicitly excluded. Contrary to Cedar Lane's interpretation, the "Coverage Limitation Endorsement" serves to limit liability coverage to third party claims that arise from the ownership of the property at issue. It does not convert the liability policy into a property damage policy.

If, as the trial court concluded, a third party's property was damaged while it was located at the subject property, or if pollutants released from that property travelled to a third party's land and caused damage, a genuine issue of fact might exist as to whether the "Coverage Limitation Endorsement" served to exclude that claim. As for this claim, however, Cedar Lane does not profess that it is liable to any third parties for property damage or bodily injury caused by the release of the pollutants. It is only requesting payment for the costs it incurred in the course of completing the EPA ordered decontamination procedures.

■ Whether a contract is ambiguous is a question of law. *Friedman & Son, Inc. v. Safeway Stores, Inc.*, 712 P.2d 1128 (Colo. App.1985). An unambiguous contract must be enforced according to its terms. *Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965).

Here, the policy terms are unambiguous; thus, there are no unresolved questions of fact as to the intent of the parties to the insurance contract. Accordingly, the trial court correctly determined that the question of coverage should be resolved in favor of St. Paul on summary judgment. *See Atchison v. City of Englewood*, 170 Colo. 295, 463 P.2d 297 (1969).

## II.

■ Cedar Lane also contends that the trial court erred in determining that St. Paul's duty to defend was not triggered because no suit had been filed against Cedar Lane. Cedar Lane contends that the administrative order issued by the EPA was the functional equivalent of a lawsuit and to require it to wait until the EPA took enforcement actions in the courts before St. Paul would be required to defend would expose it to grave risk of penalties and sanctions stemming from non-compliance with the EPA order. However, inasmuch as we have determined that the damages here were within the policy exclusions, St. Paul had no duty to defend, *see Sims v. Sperry*, 835 P.2d 565 (Colo.App.1992), and thus, we need not determine the effect, if any, of the EPA's action.

## III.

As we have concluded that the trial court's grant of summary judgment premised on the applicability of the policy exclusion provisions was correct, it is unnecessary for us to address Cedar Lane's other contentions regarding the propriety of summary judgment.

## IV.

We also reject Cedar Lane's contention that the trial court erred in awarding costs to St. Paul.

Prior to the grant of summary judgment, St. Paul extended an offer of settlement to Cedar Lane pursuant to § 13–17–202. Cedar Lane rejected this offer and, as it subsequently lost the lawsuit on summary judgment, did not obtain a judgment more favorable than the offer. On that basis, St. Paul requested an award of costs which was granted in part.

■ Cedar Lane does not dispute St. Paul's entitlement to costs under § 13–17–202, but contends that the trial court erred in awarding costs which were not incurred by St. Paul in defending Cedar Lane's motion for summary judgment or incurred in the preparation of St. Paul's motion for summary judgment. We perceive no error.

Section 13–17–202 was intended to encourage settlement and thereby to curb protracted and fruitless litigation. *See Carpentier v. Berg,* 829 P.2d 507 (Colo.App.1992).

■ Once entitlement to costs is established pursuant to the statute, the trial court has no discretion to deny an award of actual costs so long as it determines that those costs are reasonable. *McCormick v. Bradley,* 870 P.2d 599 (Colo.App.1993). Nonetheless, the trial court holds discretion over the amount of costs awarded and may disallow certain requested costs as unreasonable so long as it includes in the record its reasons for doing so. *See Scholz v. Metropolitan Pathologists, P.C.,* 851 P.2d 901 (Colo.1993); *Jorgensen v. Heinz,* 847 P.2d 181 (Colo.App. 1992).

Here, the trial court granted as reasonable St. Paul's request for an award of its answer and jury fees plus the trial preparation fees of its expert witnesses. The trial court denied St. Paul's request for photocopy costs on the grounds that it had not shown that the copies were necessary to the defense of the lawsuit and also denied St. Paul's request for costs associated with ordinary office overhead on the grounds that office overhead is not within the meaning of "costs" under the statute.

■ There is no requirement in § 13–17–202 that the costs awarded relate to any particular phase of a lawsuit except that they be costs incurred after the offer of settlement. We agree with the trial court that St. Paul could not reasonably be expected to cease preparing for trial simply because cross-motions for summary judgment were pending before the court. "[E]xpert witness fees, including compensation for trial prepa-

ration, are recoverable" as costs under the statute. *Songer v. Bowman,* 804 P.2d 261, 265 (Colo.App.1990).

To the extent that Cedar Lane argues that a certain portion of the expert witness fees should have been disallowed because the work was performed after the grant of summary judgment, the record indicates that, upon notification of the grant of summary judgment, St. Paul attempted to notify its experts that the requested work was no longer necessary. St. Paul was unable to reach them in time to prevent small amounts of work being completed after the date of the summary judgment. As St. Paul, in the absence of any cost shifting statute, would be financially responsible for this work, it is reasonable to award this portion of the expert witness fees as an actual cost incurred in trial preparation. *See Songer v. Bowman, supra.*

The judgment and award of costs are affirmed.

HUME and PIERCE,* JJ., concur.