IDA M. DODD *et al.* Plaintiffs in Error, *vs.* ADAM ROTTER-
MAN *et al.* Defendants in Error.

*Opinion filed April 21, 1928—Rehearing denied June 8, 1928.*

1. SPECIFIC PERFORMANCE—*when agreement to re-convey will
be enforced as a covenant.* The court in a proper case can enforce
specific performance of a covenant but cannot enforce performance
of a condition subsequent which works a forfeiture of the estate;
and where a grantee, at the time of taking a deed, agrees in a sep-
arate instrument to re-convey at any time the grantor may demand,
such agreement is valid and may be enforced as a covenant, not-
withstanding it is coupled with a further promise not to convey to
any other person, which promise is void as a restraint on alienation.

2. SAME—*when covenant to re-convey may be enforced against
the heirs—perpetuities—survival of actions.* An agreement by a
grantee, at the time of taking a deed, to re-convey to the grantor at
any time she may demand is not void as violating the rule against
perpetuities, as the demand for re-conveyance must be made by the
grantor in her lifetime, but it may be enforced against the heirs of
the grantee, as they take title subject to the covenant, and where
demand is made and suit instituted by the grantor in her lifetime
against the grantee's heirs, the cause of action, in case of her sub-
sequent death, survives to her heirs and personal representatives
and they may be substituted as complainants.

3. SAME—*when grantor is not estopped to enforce agreement to
re-convey—accounting.* Where a grantee, at the time of taking a
deed, agrees to re-convey upon demand by the grantor, the grantor
is not estopped to enforce the covenant by reason of the fact that
the grantee, while she had title, paid taxes, repairs and insurance
and made payments on a mortgage, nor is the complainant required
to offer reimbursement for such expenses where the agreement to
re-convey is unconditional; nor are the defendants, who are heirs
of the grantee, entitled to an accounting where no claim therefor is
made in the answer and no showing is made that the receipts from
the property were insufficient to pay the expenses.

4. DEEDS—*conditions subsequent must be clearly expressed and
will be strictly construed.* Conditions subsequent, especially when
relied upon to work a forfeiture, must be created by express terms
or clear implication and are strictly construed, and if it be doubt-
ful whether a clause in a deed be a covenant or a condition, courts
will incline against the latter construction.

5. LACHES—*when a mother is not guilty of laches in not demanding deed.* A mother is not guilty of *laches* in not demanding a re-conveyance of land from her daughter as long as the mother continues to live upon the property and the daughter admits her obligation to make such re-conveyance.

6. ESTOPPEL—*what necessary to constitute estoppel.* Estoppel must be based upon some statement or conduct of the person claimed to be estopped by which the person claiming the estoppel has been misled and induced to do something which he would not have done but for the statement or conduct of the other and by which he has been damaged.

DUNCAN and HEARD, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

SCHOLES, O'CONNOR & DOUGHERTY, and A. L. ANDERSON, (GEORGE W. HUNT, of counsel,) for plaintiffs in error.

WALLACE J. BLACK, and CLYDE M. WEST, for defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The complainants in a bill for the specific performance of a contract have appealed from the decree of the circuit court of Peoria county which dismissed their bill for want of equity. The contract is set forth in the second amended bill, on which the cause was heard, in the following language:

"I, Rose A. Evans, for and in consideration of certain quit-claim deed to me given by Sarah C. Evans and dated August 14th, 1903, for 175 acres of land in section 23, township 11 north, range 8 east of the fourth principal meridian, I do hereby agree to and with Sarah C. Evans to make her a good and sufficient quit-claim deed to the property above named should she at any time demand it, and I hereby agree not to transfer said property to any other person without the consent of said Sarah C. Evans."

Sarah C. Evans was the mother of Rose A. Evans and the owner of the land mentioned in the contract. She conveyed it to Rose on August 14, 1903, by a quit-claim deed

for the express consideration of five dollars and affection, and at the same time Rose executed the contract for its re-conveyance. The premises were the homestead of Mrs. Evans, and she and her daughter were occupying them at the time, had so occupied them for several years and continued to occupy them together until Rose was married, in 1916, to Adam Rotterman. The two were the only persons living on the premises. Rose managed and conducted the farm, rented it to various tenants, worked on it herself performing manual labor, received the rent, disposed of the landlord's part of the grain produced on the farm, paid the taxes, obtained and paid for insurance on the buildings, taking the policies in her own name, purchased the family supplies and clothing, and exercised in all ways the authority of owner of the land and performed the duties of head of the family. The relations between the mother and her daughter were harmonious. There is no evidence of the circumstances under which the deed and the agreement were executed or the motive which caused their execution. The land was subject to a mortgage for $3400 executed by Mrs. Evans and her daughter in 1898, on which the daughter made payments from time to time, the last payment, which satisfied the mortgage, being made in 1913, when the mortgage was released. Upon the marriage of the daughter, in 1916, she ceased to reside on the farm and went to the farm of her husband, two or three miles away, where she continued to live until her death, in January, 1924. She continued, however, to manage the farm and to care for her mother, who lived on the farm alone after the marriage, visiting her frequently and supplying her needs. The bill alleged, and the plaintiffs in error insist that the evidence showed, that Mrs. Evans demanded a re-conveyance of the property from her daughter, but the evidence does not show that any demand was made until the original bill in this case was filed, on May 2, 1924, after the daughter's death. Mrs. Evans died in January, 1925, leaving as her

heirs another daughter, Ida M. Dodd, who became administratrix of her estate, and six grandchildren, the children of a third daughter, who had died in her mother's lifetime.

The findings of fact by the master to whom the cause was referred were in accordance with the statement which has been made, and he made further findings that the deed to Rose A. Evans and her agreement to re-convey the property were instruments relating to the same subject matter, executed at the same time and upon the same consideration and should be construed together as one instrument, and that so construed the agreement to re-convey was in legal effect a condition subsequent, providing for the forfeiture and termination of the estate granted by the deed upon the happening of the event of a demand by the grantor for a re-conveyance of the premises; that such condition was repugnant to the grant and was therefore void; that the suit is in legal effect a suit to enforce a forfeiture of the title for a breach of the condition subsequent, and therefore the bill should be dismissed even though the agreement to re-convey were valid. The master further found that while the evidence was not sufficient to show any definite demand made by Mrs. Evans for a re-conveyance by her daughter, the commencement of the suit was all the demand necessary to be made, provided she was otherwise entitled to a re-conveyance; that immediately upon the delivery of the deed Mrs. Evans delivered possession of the premises therein described to her daughter, who entered into the open, notorious and exclusive possession of the premises, claiming title thereto in fee simple under the deed, and thereafter remained in such open, notorious and exclusive possession, claiming title in fee simple, to the time of her death; that although Mrs. Evans continued to reside upon the premises, her use and occupation of them were only those of a tenant at will of her daughter, and were in law the possession of her daughter and in no legal manner adverse or hostile to the latter.

In the original and first amended bills which were filed by Mrs. Evans in her lifetime and in the second amended bill which was filed by the plaintiffs in error after her death, it was charged that at the time of the conveyance Mrs. Evans was in feeble health and was desirous of conveying the property to her daughter because of the love and affection which her daughter bestowed upon her during her sickness, with the express understanding, however, that if Mrs. Evans should recover from her illness, upon demand being made by her on her daughter, the latter would reconvey the property to her mother by a good and sufficient quit-claim deed; and the master found that these allegations were binding upon the plaintiffs in error as to the circumstances under which the conveyance was made, and indicated that it was in the minds of both Mrs. Evans and Rose A. Evans at the time of the execution of the deed that the election of Mrs. Evans to demand a re-conveyance of the premises was to be exercised, if at all, upon her recovery from the illness from which she was suffering at the time of the execution of the instrument; that where, by a contract between two or more parties, any act or election to be performed or made by one of the parties is required to be made or performed within a reasonable time, the question of what is a reasonable time within which the action must be performed or election is to be made is to be determined by all the facts and circumstances surrounding the particular transaction; that, Mrs. Evans recovered from her illness long prior to the marriage of Rose and prior to the payment by her of the mortgage indebtedness, and under all the facts and circumstances shown by the evidence in the case, even if the agreement was in fact valid and binding on Rose, the option to demand a re-conveyance of the premises given by the deed to her mother was not exercised within a reasonable time. The master found that the bill of complaint was without equity and should be dismissed at the cost of the complainants. All objections to the report

were overruled and were renewed as exceptions before the chancellor, who overruled the exceptions, approved the report and entered a decree dismissing the bill for want of equity.

It is contended in support of the decree that the complainants did not prove the material allegations of their bill; that the contract constitutes a restraint on the alienation of the fee and was therefore void; that the alleged contract was a personal covenant between the parties and cannot be enforced after the death of either; that it violates the rule against perpetuities and is therefore void; that Sarah C. Evans, the original complainant, was guilty of *laches;* that she was estopped to ask for a re-conveyance; that the complainants have no right to carry on the present suit; that they do not offer to do equity, and that there is no equity in the bill.

The facts which have been stated are practically undisputed, and the first point is therefore not sustained.

It may be conceded that the agreement not to transfer the property to any other person than the grantor was an illegal restraint of the power of alienation, inconsistent with the estate in fee conveyed by the deed, and was therefore illegal and void, but it did not vitiate the covenant to reconvey the premises to the grantor upon her demand. It may be disregarded and leave the covenant to convey in full force. The parties were competent to contract, and their contract, so far as it was not prohibited by any rule of public policy, was valid and may be enforced. The deed and the agreement must be construed together as one instrument. *O'Neil* v. *Caples,* 257 Ill. 528.

The agreement was not a condition subsequent, a violation of which would result in a forfeiture of the title, but was a covenant which might be enforced in equity. Conditions subsequent, especially when relied upon to work a forfeiture, must be created by express terms or clear implication and are strictly construed. (4 Kent's Com. *130.)

If it be doubtful whether a clause in a deed be a covenant or a condition, courts will incline against the latter construction. (4 Kent's Com. \*132; *Gallaher* v. *Herbert,* 117 Ill. 160; *Koch* v. *Streuter,* 232 id. 594; *Nowak* v. *Dombrowski,* 267 id. 103; *Bald* v. *Nuernberger,* id. 616; *O'Neil* v. *Caples, supra.*) The words of the agreement are in the form of a covenant, there is no provision for a forfeiture of the estate, a re-entry by the grantor or the termination of the estate by the happening of some subsequent contingent event, and the agreement has none of the characteristics of a condition subsequent. The court in a proper case can enforce the specific performance of a covenant but can not enforce the specific performance of a condition subsequent, which works a forfeiture of the estate. *O'Neil* v. *Caples, supra; Sanitary District* v. *Chicago Title and Trust Co.* 278 Ill. 529; *Northwestern University* v. *Wesley Memorial Hospital,* 290 id. 205.

The deed and agreement must be construed together with reference only to the language of the two instruments and the conditions and circumstances surrounding the parties as shown by the evidence. These facts and circumstances show the mother and daughter living together on the mother's farm, constituting a family, the daughter being the active agent in the management of the farm and conducting all the business of the farm and the family, the mother depending upon the daughter as the active manager and taking no part in the conduct of the business. Their relations were harmonious and confidential. The mother, without any consideration except five dollars and affection, conveyed the farm to the daughter, whether at her own suggestion or that of her daughter does not appear, and the only evidence of a contract is the two written instruments which were executed to evidence the understanding between them. No doubt the intention and expectation of the mother was that her daughter should have the title to the farm, that they should continue to live together in the

relation then existing so long as they both lived, and, anticipating her death before that of her daughter, that then the daughter should retain the ownership of the farm. At the same time, whether at the suggestion of the one or the other, it was agreed that the mother should have a right to demand a re-conveyance of the farm whenever she chose. Doubtless this agreement was made to protect the mother against the unforeseen vicissitudes of life and give her security against the changed situation which might result from misfortune or any circumstances which might change the relation of the parties to the disadvantage of the mother. The doctrine is well established that one person may purchase land of another and agree to sell it back to him on the payment of a stipulated price. Such contracts are always sustained where the transactions are in good faith and not tainted with fraud. (*Eames* v. *Hardin,* 111 Ill. 634.) In this case the transaction was a gift with a contract to reconvey upon request, for which the conveyance was a sufficient consideration, and no reason appears why such a contract is not valid. The agreement gave no estate in the land to Mrs. Evans and no interest in it. It was a mere personal privilege to demand the re-conveyance of the farm when she desired to—a possibility of acquiring an interest in the land. The daughter's agreement was with Mrs. Evans alone and the privilege granted was personal to her. It did not purport to extend to her assigns or to her heirs. From the character of the transaction, the relation of the parties, their circumstances and conduct at the time, the daughter's covenant must be construed as extending a personal privilege to the mother to resume her ownership of the farm whenever future circumstances might make it seem desirable to her to do so. This privilege was not assignable and would not descend to her heirs. The contract, therefore, did not violate the rule against perpetuities, because the right, being personal to Mrs. Evans, would terminate with her death.

It is argued on behalf of the defendants in error that Mrs. Evans was guilty of *laches,* and that if the charges in the bill that at the time of the conveyance Mrs. Evans was in feeble health and was desirous of conveying her property to her daughter with the express understanding that if she should recover from her illness her daughter would re-convey the property on demand were true, the election to demand a re-conveyance of the premises was to be exercised upon her recovery from the illness from which she was then suffering. From this premise the conclusion is drawn that her cause of action for specific performance, if any, arose at that time, that the Statute of Limitations then began to run, that she waited over twenty years before she commenced her suit, and that in so doing she was guilty of *laches.* The master found that these allegations were binding upon the plaintiffs in error as to the circumstances under which the conveyance was made, and that under all the circumstances shown in the case the option to demand a re-conveyance of the premises was not exercised within a reasonable time. All these allegations were denied by the answer and no evidence was introduced to sustain them. The contract sought to be enforced was in writing and a copy was set forth in the bill. The case must be decided upon that contract, and the allegations are of no importance because, whether true or false, they cannot affect the construction of the written contract. There was no evidence of *laches* of the complainant. No time was fixed within which she was required to make a demand for a conveyance but the agreement expressly provided for a re-conveyance to her upon her demand "at any time." She had all her life in which to demand the conveyance. Her right to a conveyance was never disputed by her daughter. There is no evidence that the daughter ever suggested that her mother would not have a right to the conveyance if she demanded it. After her marriage she admitted that she made the agreement with her mother to convey the property back

upon her demand and that she was willing to do it, but said that she was afraid that her mother was going to deed it to Mrs. Dodd, (one of the complainants in this case and Rose's sister,) and that Rose did not want to deed the property to her mother for that reason. So long as Mrs. Evans was living on the farm and her daughter admitted her obligation to convey the property back to her, Mrs. Evans was not guilty of *laches* in not making a demand or bringing suit for a conveyance to herself.

It is also argued that Mrs. Evans was estopped to ask for a re-conveyance because she permitted her daughter, under the deed, to pay all the taxes assessed against the land, pay out money in keeping up the improvements, pay off the mortgage, manage, control and rent the premises and spend her money in the payment of insurance premiums for insurance on the buildings. Rose did these things as the owner of the property. There was no evidence that she did not receive from the farm more income than was sufficient to make all these payments. The receipts from the farm all belonged to Rose as the owner of the fee. She had the use of the land; she was a maker of the notes secured by the mortgage; it was her duty to pay the taxes and her interest to keep the buildings insured. There is no evidence that she ever asked her mother to contribute to the payment of these charges or expected her to do so. She recognized and faithfully performed her duty as a good daughter to care for her mother and she never denied her obligation to re-convey the property upon her mother's demand. The only reason she ever gave for not doing so was her fear that her mother would give the property away, and there is no reason to suppose that there may not have been good cause for such fear though it was not a legal defense against her covenant. Estoppel must be based upon some statement or conduct of the person claimed to be estopped by which the person claiming the estoppel has been misled and induced to do something which he would not

have done but for the statement or conduct of the other and by which he has been damaged. Nothing of the kind is disclosed by the evidence.

It is contended that if Mrs. Evans had a right to commence this suit that right did not pass to her personal representatives or to her heirs. Mrs. Evans had the right to exercise the privilege of demanding a re-conveyance of the property in her lifetime. The title to the property was in the daughter at her death, and this title passed by her will just as she held it, subject to the right of Mrs. Evans to a re-conveyance upon her demand. By the beginning of her suit she made the necessary demand and perfected her right to a conveyance. This was a contract right which, under section 2 of the act in regard to contracts, (Rev. Stat. 1874, chap. 29,) could be enforced against the heirs and personal representatives of her daughter. This cause of action survived to her heirs and personal representatives, and upon the suggestion of her death the court properly permitted her heirs and representatives to be substituted and the suit to proceed in their behalf.

It is objected that the bill does not offer to reimburse her daughter's estate on account of any money rightfully expended by her for the payment of the mortgage and for taxes, repairs and insurance during the time she held the title and for the living expenses of her mother which she paid. The right to demand a re-conveyance was not made conditional by the agreement but was an absolute right to a re-conveyance should Mrs. Evans at any time demand it. No claim is made in the answer and no showing made in the evidence of any right to an accounting or that the receipts from the farm were not greater than the amounts paid by the daughter for the purposes mentioned, and no offer to re-pay them was required.

The bill contains allegations in regard to certain certificates of deposit alleged to belong to the estate of Mrs. Rotterman and prays for an accounting in regard to them and

in regard to grain raised on the farm before and since her death, but the plaintiffs in error abandoned these claims in the circuit court and no question arises upon this branch of the case.

The decree will be reversed and the cause remanded to the circuit court, with directions to enter a decree for the conveyance of the real estate to the heirs of Sarah C. Evans in accordance with their respective interests.

*Reversed and remanded, with directions.*

DUNCAN and HEARD, JJ., dissenting.