[Civ. No. 28134. Second Dist., Div. Four. Oct. 16, 1964.]

ROBERT L. MERCER et al., Plaintiffs and Respondents, v. LEO W. LEMMENS, as Administrator, etc., et al., Defendants and Appellants.

Cadoo, Tretheway & McGinn and Jack W. Morgan for Defendants and Appellants.

Healy & Helm and Richard F. Healy for Plaintiffs and Respondents.

BURKE, P. J.—Plaintiffs sued for damages for breach of a contract which had accorded them a preemptive right to purchase a particular parcel of real property from defendant.[1] At the time of purchase of one lot from defendant the parties had included in the deposit receipt the clause, "If seller decides to sell the other 50 foot lot he will give buyer first chance to purchase at $10,000.00." The receipt was dated June 8, 1955. In the escrow instructions which followed,

---

[1]The singular defendant is used herein for simplicity. The original defendant entered into the agreements involved. He became incompetent and a guardian was appointed; later he died and his executor was appointed, who, with his heirs, are named defendants in the action. The issues, however, remain the same despite the plurality of named defendants.

dated June 16, 1955, there was the following elaboration of the clause: "As a matter of record only, with which escrow holder is not to be concerned, it is the agreement between all the parties signing these instructions that if the seller decides subsequent to the date of these instructions to sell the adjoining 50 foot lot to the within described property, he is to give the buyer first chance to purchase said adjoining 50 foot lot for the sum of $10,000.00.''

Six years later defendant contracted to sell the ''adjoining'' 50-foot lot for $22,000 by executing a deposit receipt for the sale, whereupon plaintiffs attempted to assert their preemptive right to purchase the lot for $10,000. Defendant denied the claimed right. Plaintiffs brought suit for specific performance, reformation and specific performance, and for damages for breach of contract. Defendant filed an answer and cross-complaint for reformation and to quiet title. Judgment was in favor of plaintiffs in the sum of $12,000 with interest, the amount by which the property in question had appreciated in value from the date of the original agreement. Defendant appeals from such judgment.

Essentially defendant contends the preemptive agreement was written by the real estate broker who represented the original defendant; that the clause was ambiguous and uncertain and therefore unenforceable; that no consideration supported the alleged agreement; that the statute of frauds precludes oral testimony to supply a land description which is missing; that the alleged agreement constituted an unreasonable restraint and suspension of the power of alienation; that the agreement, if any existed, was binding, at most, for a reasonable time only and specific enforcement would be unreasonable.

The pertinent clauses, creating the preemptive right, were clear and definite—no essential terms were left for future settlement if the seller should, in his lifetime, decide to sell the property. ■ The distinction between an option and a preemptive right is well recognized in the law. A preemptive right does not give the preemptioner the power to compel an unwilling owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemptive right at the stipulated price and is valid. (2 Witkin, Summary of Cal. Law (7th ed. 1960) Real Property, § 163, p. 1006; 6 American Law of Property, § 26.64, p. 507.)

■ Defendant attacks the sufficiency of the description

of the property affected by the preemption clause wherein it was referred to as the "adjoining" 50-foot lot. However, a contract includes not only what is expressly stated, but also what is necessarily to be implied from the language used (*Southern Pac. Milling Co.* v. *Billiwhack etc. Farm, Ltd.,* 50 Cal.App.2d 79 [122 P.2d 650]), and the evidence dispelled any uncertainty as it established that the seller had no other real property which was adjoining or contiguous. There was proof that plaintiffs had more than sufficient funds to purchase the property at the stipulated price, which they formally requested they be permitted to do upon learning of the seller's intention to sell to others for $22,000.

■ Responsive to defendant's contention that the preemptive right contemplated only a "reasonable" time within which it might be exercised, plaintiffs rightfully contend that such right activates only when the seller decides to sell and the "reasonableness" of time within which the holder of the preemptive right must act is computable only from the time of such decision to sell. In *Thomson* v. *Lineer,* 86 Cal. App.2d 838, 839 [195 P.2d 838], the court stated: "The right to exercise the option is expressly made contingent upon the happening of an uncertain future event—'when I sell my ranch.' It is couched in personal terms and, literally construed, the condition upon which the right to exercise the option depends can only occur during the promisor's lifetime and became impossible of performance upon his death. This is the natural meaning to be placed upon the language used."

The same reasoning applies to the exercise of a preemptive right, since such right becomes an option when the owner has elected to sell. Any delay in deciding to sell is chargeable to the owner, not to the holder of the preemptive right. Here, upon notice of the owner's decision to sell, plaintiffs acted promptly to exercise their right to buy.

■ The sufficiency of consideration for the grant of the preemptive right is attacked by defendant but this issue was resolved upon the evidence favorably for plaintiffs. Testimony was given to the effect that parcel 1 would not have been purchased by plaintiffs without the hope that they could purchase the adjoining lot for $10,000 when and if defendant decided to sell. In a bilateral contract, moreover, the promise of one party is consideration for that of another and any valid promise is sufficient consideration for another promise. (*Tumansky* v. *Woodruff,* 14 Cal.App.2d 279, 283

[57 P.2d 1372].) The record indicates that the sale of the one parcel and the grant of the preemptive right were one transaction and supported by the mutual promises of the parties and the payments to be made by the buyer.

Defendant's contention that the construction placed upon the preemptive clause is unreasonable is without merit. The seller was satisfied in 1955 with his transaction and simply because the property increased substantially in value in the meantime the exercise of the preemptive right is not rendered unreasonable. The death of the seller subsequent to his contracting to sell the property to a third person has no bearing on the right of the preemptive right holder to enforce his contract. Only the death of the seller prior to any decision to sell the property would have extinguished the preemptive right.

The present market value has no bearing upon the reasonableness of the agreement when entered into in 1955. It is only pertinent in determining damages and then only if damages are allowable, which requires a showing of bad faith.

California Civil Code, section 3306, provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon, but adding thereto, in case of bad faith, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed, at the time of the breach, and the expenses properly incurred in preparing to enter upon the land."

Defendant claims that the amount of damages allowed was excessive. Testimony as to the present market value of the property in question ranged from $25,000 to $28,300. Evidence of the listing of the property for sale, as made by defendant Leo William Lemmens, on behalf of defendant John Lemmens, owner of the property, and of the subsequently executed agreement to sell for $22,000, established not only the seller's decision to sell but his view of the value of the property at the time of such intended sale, which could be considered on the issue of damages.

If the vendor is guilty of bad faith, the purchaser is entitled to the benefit of his bargain, that is, the difference between the contract price and the market value at the time of breach. (*Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511, 518 [55 P.2d 859].) In the case of *Kahn* v. *Lischner,* 128 Cal.App.2d 480, at page 490 [275 P.2d 539], the court stated: "The trial court was justified in finding that appel-

lant terminated his contract with respondent because he had made a bad bargain and saw an opportunity to make a better deal.'' The court further stated: ''Failure to convey property without any just reason or excuse is bad faith within the meaning of Civil Code, section 3306. (*Clark* v. *Yocum,* 116 Cal. 515 [48 P. 498].) 'Bad Faith' as used in that section does not require a showing of fraud. (*Pixley* v. *First Federal Sav. & Loan Assn.,* 110 Cal.App.2d 427, 432 [243 P.2d 100].) Bad faith is shown where there is a deliberate refusal to perform (*Nelson* v. *Fernando Nelson & Sons,* 5 Cal.2d 511, 518 [55 P.2d 859]) or without just cause or excuse a declination to perform. (*Engasser* v. *Jones,* 88 Cal.App.2d 171, 177 [198 P.2d 546].)''

 In *Cumberpatch* v. *Nolan,* 125 Cal.App.2d 205, 207 [270 P.2d 540, 271 P.2d 519], it is stated: '' '[B]ad faith in a defaulting vendor in a contract to convey real property need not be specially alleged in order to make out a cause of action under the last provision of section 3306 of the Civil Code.' (*Johnson* v. *Schimpf,* 197 Cal. 43, 47 [239 P. 401].)''

 In the case of *Shaw* v. *Union Escrow etc. Co.,* 53 Cal.App. 66, at page 69 [200 P. 25], the court points out the inappropriateness of awarding damages against an innocent vendor who is not in position to convey. However, damages are allowable against a vendor who knowingly or negligently attempts to divest himself of the ability to fulfill his contract to convey. The court in *Shaw, supra,* stated as follows: ''As we understand the law it is not necessary, in order to establish bad faith within the meaning of section 3306 of the Civil Code, that the vendor be shown to have refused to go on with the transaction because of some gain which would accrue to him. It is sufficient if he refuses to convey, where through his own negligence he has put it out of his power to fulfill the obligations of his contract.''

 The trial court found that defendant deliberately refused to perform his agreement with plaintiffs because he could sell to better advantage to others and without just cause, and that such refusal to perform was in bad faith. Accordingly, the allowance of the $12,000 difference between the preemptive price and the market value of the property was properly awarded as damages.

The judgment is affirmed.

Jefferson, J., and Kingsley, J., concurred.